UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINA LANDERS,

    Plaintiff,      Civil No. 04-6384-HA

  v.           OPINION
              AND ORDER
JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

    Defendant.

Kathryn Tassinari
Robert Baron
Cram, Harder, Wells & Baron, P.C.
474 Willamette St., Suite 200
Eugene, Oregon 97401
  Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204

David R. Johnson
Social Security Administration
701 Fifth Avenue, Suite 2900
Seattle, Washington 98104
    Attorneys for Defendant

HAGGERTY, Chief Judge:

Plaintiff brings this action pursuant to § 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. §1383(c)(3), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income (SSI).

For the reasons provided below, the court concludes that the decision of the Commissioner is not supported by substantial evidence. The Commissioner's decision is reversed and this case is remanded for the calculation of an award of benefits.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for SSI benefits on September 10, 2000. She alleged disability beginning at birth in 1982. The claim was denied initially and upon reconsideration. Plaintiff had filed a previous application in 1999 that was denied on initial consideration and not further pursued by plaintiff. A hearing was held before an Administrative Law Judge (ALJ) on May 10, 2004.

On July 26, 2004, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Plaintiff requested review from the Appeals Council, which was denied. The Appeals Council's denial of review made the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. §§ 416.1481, 422.210.

**FACTUAL BACKGROUND**

Plaintiff was twenty-two years old at the time of the ALJ's decision. She was in special education throughout her educational career and her grade point average at the end of the tenth grade was 0.62. She graduated high school with a modified, special education diploma. Plaintiff has no employment history, has never lived alone, has never taken public transportation alone, and has tested at an Intelligence Quotient (IQ) level of seventy-two, seventy-two, and seventy-seven in three respective tests.

Plaintiff's foster mother brought her to neurologist Dr. Stephen Patterson in December 1982, when plaintiff was nine months old, for failure to thrive. Her foster mother noted plaintiff had poor head control, had not learned to crawl or support herself, and had occasional staring spells. The diagnosis of Dr. Patterson was "developmental delay, question etiology." Administrative Record (AR) 319.

On November 23, 1998, plaintiff sought treatment by Dr. Mark C. Phillips for "syncopal" episodes of breathing hard and then losing consciousness. She stated she had been suffering such episodes since she was a child. Doctor Phillips noted that there was a family history of epilepsy, but that plaintiff was a poor historian and "mild mental retardation is quite apparent," so he referred her for an electroencephalogram (EEG) and a follow-up

appointment. AR 243. On December 14, 1998, plaintiff was examined regarding her syncopal episodes, but due to her submentation, inability to give a reliable history, and refusal to consent to lab work, Dr. Phillips elected to wait for the EEG results. On December 16, 1998, the EEG results were reported as abnormal.

Plaintiff was examined on February 9, 1999 by Dr. Joel R. Daven, a neurologist. Plaintiff recounted a history of frequent blackout spells that involved difficulty speaking and seeing, but not a complete loss of consciousness, and lasting around thirty minutes. She reported improving after moving in with her grandfather. Doctor Daven noted slightly indistinct speech, a slightly widened palpebral fissure on the left side, a fine tremor of her outstretched arms, and mild dyssynergia. Despite plaintiff's strong family history of seizures and her abnormal EEG, Dr. Daven was reluctant to prescribe anticonvulsants without any witnessed overt seizures, and he recommended a period of "watchful waiting." AR 222.

On November 19, 1999, plaintiff was examined by Dr. Michael R. Villanueva, a licensed psychologist, at the request of defendant. Doctor Villanueva noted that plaintiff was a limited historian, inadequately managed her own hygiene, and had difficulty making age-appropriate friends. Doctor Villanueva observed that plaintiff had a "somewhat dysmorphic facial appearance" and a "fairly wide, thick neck." AR 210. He also noted her poor articulation in speech and concluded that her social skills were "obviously poor." *Id*.

Plaintiff tested at an IQ of seventy-two, and Dr. Villanueva found some difficulties with "very basic attention skills and orientation." *Id*. In his final recommendation, Dr. Villanueva concluded that plaintiff has a borderline IQ, "particular difficulties in regards to

social reasoning," and "presents in a way that is less than socially acceptable for her age." AR 211.

On October 4, 2000, plaintiff was examined by Dr. Charlotte Higgins-Lee, a licensed psychologist. Plaintiff tested at an IQ of seventy-two. Dr. Higgins-Lee found plaintiff to be easily confused by test instructions and that her testing revealed impaired concentration, attention, mental processing speed, concrete thinking, and social understanding. Plaintiff demonstrated relative strengths in working memory and arithmetic. Doctor Higgins-Lee diagnosed plaintiff with mild mental retardation and noted marked restrictions in daily living activities, moderate impairment in social functioning, and frequent impairment in concentration, persistence, and pace.

Doctor Higgins-Lee again examined plaintiff on September 13 and October 17, 2001. Doctor Higgins-Lee noted that plaintiff had a tremor to her hands and that her writing was large and childlike. Plaintiff tested at an IQ of seventy-seven. Because plaintiff had taken the test many times before, Dr. Higgins-Lee suggested that the higher score may have been due to a "practice effect." TR 299. Plaintiff tested at a second grade reading level and fifth or sixth grade arithmetic skill level. Doctor Higgins-Lee concluded that plaintiff would have difficulty in a competitive work environment or any type of work that required fine motor skills and processing speed. Doctor Higgins-Lee diagnosed plaintiff with borderline intelligence and noted marked restrictions in daily living activities, marked impairment in social functioning, and marked impairment in concentration, persistence, and pace.

Plaintiff returned to Dr. Patterson in December 2001 for evaluation of hand tremors. Plaintiff was prescribed Inderal for the tremors.

In December 2004 plaintiff was examined again by Dr. Daven on referral from defendant, for complaints of tremors and cognitive difficulties. Doctor Daven assessed plaintiff as having evidence of a postural tremor and "significant limitations in her cognitive abilities." AR 346. He concluded plaintiff was limited in handling, fingering, reaching in all directions and postural activities.

Plaintiff had other examinations and evaluations that indicated a deficiency in concentration, personal hygiene and social skills. On July 19, 1999, Dr. Phillips recorded that plaintiff's overall hygiene was "very, very poor." AR 237. On October 15, 1999, David Wilkerson, a teacher at Riddle High School, noted plaintiff did not socialize well or react appropriately to her peers and that she liked to be alone. Mr. Wilkerson felt she could concentrate and remain on task. On January 23, 2001, Susan Young, the school psychologist for the Douglas Education Service District, evaluated plaintiff's concentration differently, noting she could only concentrate on work at her level and could remain on task for only twenty minutes. AR 249. Ms. Young also reported that plaintiff was disruptive, prone to angry outbursts, reacted inappropriately to peers, did not know how to engage socially, and was rejected socially due to poor personal hygiene.

**QUESTION PRESENTED**

The issue in this case is whether the ALJ's decision is supported by substantial evidence and free from legal error. Specifically, plaintiff asserts that the ALJ erred in: (1)

improperly rejecting the opinion of Dr. Higgins-Lee, the examining psychologist; (2) not giving proper credit to the opinion of Dr. Daven, the examining neurologist; (3) improperly rejecting plaintiff's own testimony; and (4) failing to meet the necessary burden of proof that plaintiff retains the ability to perform other work in the national economy. Because the court finds that the ALJ failed to properly credit the opinion of Dr. Higgins-Lee, the court need not address plaintiff's additional arguments.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A person can be disabled only if his or her impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). The Commissioner bears the burden of developing the record. 20 C.F.R. §§ 404.1512(d), 416.912(d); *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for disability benefits. 20 C.F.R. §§ 404.1520, 416.920; *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). If a

determination that the claimant is or is not disabled can be made at any step, further review is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Below is a summary of the five steps:

<u>Step One</u>. The Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. If the claimant is not working in a substantially gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 416.920(a)-(b).

<u>Step Two</u>. The Commissioner determines whether the claimant has a severe mental or physical impairment. If not, the claimant is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 416.920(c).

<u>Step Three</u>. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration regulations. 20 C.F.R. pt.404, subpt.P, app. 1. If so, the claimant is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

<u>Step Four</u>. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. The ALJ examines the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). A claimant must be able to perform his or

determination that the claimant is or is not disabled can be made at any step, further review is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Below is a summary of the five steps:

<u>Step One</u>. The Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. If the claimant is not working in a substantially gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 416.920(a)-(b).

<u>Step Two</u>. The Commissioner determines whether the claimant has a severe mental or physical impairment. If not, the claimant is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 416.920(c).

<u>Step Three</u>. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration regulations. 20 C.F.R. pt.404, subpt.P, app. 1. If so, the claimant is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

<u>Step Four</u>. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. The ALJ examines the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). A claimant must be able to perform his or

her past relevant work either as actually performed, or as generally performed in the national economy. 20 C.F.R. § 416.920(e). If the claimant is able to perform the work, the claimant is not disabled. If the claimant demonstrates that he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds to Step Five. *Id.*

Step Five. The Commissioner determines whether the claimant is able to do any other work. If not, the claimant is disabled. If the Commissioner finds the claimant is able to do other work, the Commissioner must show a significant number of jobs in the national economy exist that the claimant can perform. The Commissioner may satisfy this burden through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines. 20 C.F.R. pt.404, subpt.P, app.2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that claimant can perform, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(f).

The burden of proof is on the claimant as to Steps One through Four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). As noted above, however, at Step Five, the Commissioner bears the burden of showing that the claimant can perform jobs that exist in significant numbers in the national economy. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence

means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

The Commissioner's decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039–40. However, a decision supported by substantial evidence still must be set aside if the Commissioner failed to apply the proper legal standards in weighing the evidence and making the decision. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998). The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court and turns on the apparent utility of such proceedings. 42 U.S.C. § 405(g) (sentence four); *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000); *see also Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

## DISCUSSION

At Step One, the ALJ found that plaintiff had never engaged in substantial gainful activity. At Step Two, the ALJ found that plaintiff has severe impairments that cause significant, vocationally relevant limitations. At Step Three, the ALJ found that plaintiff has no impairment or combination of impairments that meets or equals the criteria of any listed impairment. The ALJ then proceeded to Step Four and considered plaintiff's residual functioning capacity and determined that plaintiff can physically perform light work; mentally can perform simple tasks with consistent well established routines which do not

involve fast paced production; cannot have close interactions with the general public; cannot perform keyboarding; and can only do limited fine manipulations. With this functioning capacity assessment, the ALJ found at Step Five that plaintiff cannot perform the full range of light work but can perform work that exists in significant numbers in the national economy and, therefore, is not disabled within the parameters of the Act.

The ALJ improperly rejected the opinion of Dr. Higgins-Lee

After examining plaintiff in late 2000 and again in late 2001, Dr. Higgins-Lee determined plaintiff had marked limitations in daily living activities, social functioning, and concentration, persistence and pace. To meet the criteria of a listed impairment under the Act, plaintiff must have a marked restriction in two of the four functional areas. 20 C.F.R. pt.404, subpt.P, app. 1, Listing 12.02. The assessment of Dr. Higgins-Lee that plaintiff has restrictions in three of the four functional areas places plaintiff within a listed impairment, and if credited, requires a presumptive conclusion of disability. 20 C.F.R. § 404.1520(d).

The ALJ rejected the conclusions of Dr. Higgins-Lee, determining they were "overstated." AR 20. The ALJ gave greater weight to the opinion of Dr. Edwin Pearson, the consultive psychologist who testified after reviewing the record. Dr. Pearson concluded that plaintiff had only mild restrictions.

The ALJ rejected Dr. Higgins-Lee's assessment that plaintiff had marked limitations in activities of daily living. Such activities include cleaning, shopping, cooking, using

public transportation, paying bills, maintaining a residence, personal grooming and hygiene, using a phone book, and using a post office.

To support the rejection of Dr. Higgins-Lee's determination, the ALJ noted that plaintiff did her homework, helped with household chores, and fixed her own meals. The record shows that plaintiff performed some minimal household activities, such as cooking limited to eggs, pasta or frozen dinners, and mopping the kitchen floor once a week. However, the record also shows that plaintiff has never lived alone, did not pay bills, did not use public transportation, could not monitor her medication, could not go shopping on her own, could not drive a car, and had severe problems maintaining her personal hygiene. Plaintiff's extremely poor personal hygiene was problematic and was reported by Dr. Phillips, school psychologist Sue Young, and Dr. Villanueva. AR 237, 250, 208.

To properly reject the opinion of an examining physician that is contradicted by another physician, an ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. *Id.* The opinion of Dr. Higgins-Lee was entitled to greater weight than that of Dr. Pearson, because she examined plaintiff on two separate occasions. The ALJ did not meet his burden of providing specific, legitimate reasons supported by substantial evidence in the record to reject the conclusion of Dr. Higgins-Lee that plaintiff was markedly restricted in the areas of daily living activities.

The ALJ next rejected the determination by Dr. Higgins-Lee that plaintiff was markedly limited in social functioning, finding that "there is no evidence of problems in interpersonal relationships or dealings with others or social avoidance." AR 20. The conclusion of the ALJ is contradicted by the record.

Two separate school evaluations reported plaintiff's social avoidance and difficulties with social interaction. AR 174, 250. Dr. Villanueva noted that it was difficult for plaintiff to make age appropriate friends, that her social skills were obviously poor, and that she had particular difficulties in regards to social reasoning. AR 208, 210-11. The dismissal of the assessment of Dr. Higgins-Lee that plaintiff was markedly restricted in the area of social functioning is unsupported by substantial evidence.

The ALJ also rejected the conclusion of Dr. Higgins-Lee that plaintiff was markedly limited in concentration, persistence, and pace. This area of functioning is defined as the ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in the workplace. The ALJ discredited Dr. Higgins-Lee for inconsistencies in her 2001 report. Doctor Higgins-Lee evaluated plaintiff with "marked" limitations, but also wrote that plaintiff's concentration was "good." AR 307.

In her first evaluation of plaintiff in 2000, Dr. Higgins-Lee considered plaintiff to be markedly limited in her ability to maintain attention and concentration for extended periods, with an overall limitation in this functioning area of "frequent" (which is the equivalent of "marked" on that form). Doctor Higgins-Lee found plaintiff to be easily

confused by the test instructions, and the test results indicated impaired concentration and attention.

One year later Dr. Higgins-Lee performed a second evaluation of plaintiff. As plaintiff had undergone this type of testing on many occasions, Dr. Higgins-Lee opined that a practice effect may have resulted in higher test scores. On this test, plaintiff's overall score went up by seven points, she was not confused by the test instructions, and the test results indicated good concentration, but still at a very slow pace.

The ALJ emphasized an apparent discrepancy between an evaluation of marked limitation and a notation of good concentration. AR 20. The court does not find this to be a notable discrepancy. The overall rating is based on the three factors of concentration, persistence, and pace, and it also includes a durational component. Plaintiff tested at a remarkably slow pace. Additionally, the notation by Dr. Higgins-Lee does not indicate the duration or level of work at which plaintiff could maintain good concentration. There is evidence in the record that plaintiff could maintain concentration for only very short durations. Ms. Young evaluated plaintiff as being able to remain on task for twenty minutes or less and having good concentration only if work is at her level. AR 249. Dr. Villanueva concluded plaintiff had "difficulties with very basic attention skills and orientation." AR 210. The notation by Dr. Higgins-Lee that plaintiff had good concentration at one testing, which could have been due to the practice effect, does not preclude an overall evaluation of marked limitation in this functioning area. There is not substantial evidence in the record to justify discarding Dr. Higgins-Lee's assessment.

Doctor Higgins-Lee's assessment places plaintiff within a listed impairment. In cases in which the ALJ's fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is generally credited as a matter of law. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995).

Recently, one panel in the Ninth Circuit has questioned whether this "crediting as true" doctrine is mandatory. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) ("[i]nstead of being a mandatory rule, we have some flexibility in applying the 'crediting as true' theory.").

The "crediting as true" rule was established in *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396 (9th Cir. 1988) (referred to as "*Varney II*"). In adopting the "crediting as true" rule of the Eleventh Circuit, the Ninth Circuit acknowledged that the rule promotes important objectives: "Requiring the ALJs to specify any factors discrediting a claimant at the first opportunity helps to improve the performance of the ALJs by discouraging them from 'reach[ing] a conclusion first, and then attempt[ing] to justify it by ignoring competent evidence in the record that suggests an opposite result.'" *Id*. at 1398 (citation omitted).

A close reading of *Varney II* confirms that the Ninth Circuit did not distinguish between crediting a claimant's pain testimony and crediting improperly rejected medical reports regarding the claimant's health. However, further analysis of this divergence and *Connett's* possible impact is inapplicable here.

This court construes the reasoning in *Connett* regarding the "crediting as true" doctrine as continuing to permit an improperly rejected medical opinion to be credited as true.

Even if the scope of the reasoning were intended to include improperly rejected medical opinions, the validity of these rulings is unclear. Only a panel sitting *en banc* may overturn existing Ninth Circuit precedent. *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996) (citations omitted); *see also Baker v. City of Blaine*, 221 F.3d 1108, 1110 n.2 (9th Cir. 2000) (a court panel has no authority to disavow the holdings of a prior panel). Accordingly, this court concludes that Dr. Higgins-Lee's improperly rejected opinions must be credited as true.

When the improperly rejected evidence is credited as true, the court concludes that no further development of the record is necessary and a finding of disability is required.

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner finding plaintiff Christina Landers not disabled is reversed. This action is remanded for payment of benefits.

IT IS SO ORDERED.

DATED this 7th day of November, 2005.

                                                    /s/ Ancer L. Haggerty
                                                    Ancer L. Haggerty
                                                United States District Judge